## Case No. 5,148.

### In re FULLER.

[1 Sawy. 243;[1] 4 N. B. R. 115 (Quarto, 29). 18 Pittsb. Leg. J. 82; 2 Chi. Leg. News, 373; 2 Leg. Gaz. 293.]

District Court, D. Oregon. Aug. 1, 1870.

Lansing Stout, for the motion.
M. W. Fechheimer, contra.

DEADY, District Judge. Price Fuller was adjudged a bankrupt in this court on December 20, 1869, upon his own petition therefor, filed on the 18th of the same month.

On March 27, 1869, the bankrupt confessed judgment without action in the circuit court for the county of Benton in favor of Green B. Smith for the sum of $2,665, with interest payable annually at one per centum per month, and if not so paid to be considered as principal and thereafter to draw the same rate of interest as the original principal.

The confession states the origin of the indebtedness for which the judgment was confessed as follows: "The facts out of which said indebtedness arose are these, for money, gold coin, borrowed of and in hand paid to me, the said defendant, by the said Green B. Smith."

At the date of this judgment the bankrupt owned two tracts of land in Benton county, one containing 640 and the other about 23

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

acres. The judgment was duly docketed on the day it was confessed and thereafter became a lien upon the real property aforesaid. On November 20, said Smith sued out execution upon said judgment, upon which the sheriff of the county aforesaid on December 2, 1869, sold of the personal property of the bankrupt what brought at such sale $50.50; and on December 24, 1869, said sheriff sold upon said execution the first mentioned tract of land aforesaid, to one Thomas Reed for the sum of $2,750; and on January 7, 1870, said sheriff levied upon the second mentioned tract of land aforesaid and was proceeding to sell the same on January 10 thereafter when he was enjoined by the process of this court.

On January 4, 1870, the bankrupt filed a petition in this court praying that the sheriff aforesaid be enjoined from paying over to said Smith any of the proceeds of the sale of the real property aforesaid, and from selling upon said execution any of the real property of the bankrupt. On reading and filing the petition, an order was made allowing the writ of injunction as prayed for.

In addition to other facts above stated, it was alleged in the petition, that the property aforesaid would not fetch so much at the sheriff's sale as upon a sale by the assignee, because of doubts existing as to the legality of a sale by the former, and that if the property already sold were resold by the assignee, it would, in the opinion of the petitioner, bring $3,000, and that said Smith at the time of accepting the confession of judgment aforesaid, "knew the petitioner to be insolvent." On July 11, Smith applied to the court for an order modifying the injunction so as to permit the sheriff to pay over the proceeds of the property sold before the service of the injunction.

By agreement between counsel for the application and the assignee (who had been appointed since the allowance of the injunction) the motion was heard on July 18. On the hearing, among other papers in the case, counsel for the assignee read a paper, verified by said Smith on January 27, setting forth the nature of his demand against the bankrupt, the consideration thereof, what security he had therefor, as above stated, and that the property aforesaid is not worth more than his claim, and "prays that the money in the hands of the sheriff and the property remaining unsold be released to him."

Upon these facts the reasonable inference is, that Smith took the judgment in violation of the bankrupt act. It was taken with a knowledge of Fuller's insolvency, and therefore must be presumed, in the absence of any evidence to the contrary, to have been taken with the belief that a fraud on the act was intended. But as the judgment was given more than six months before the filing of the petition by the bankrupt, it is not void although taken contrary to the act.

The bankrupt act does not avoid a judgment except as declared and provided in section 35 of the act. Section 39 declares what conduct of a debtor shall be deemed an act of bankruptcy. It also imposes a forfeiture of his debt upon the creditor who participates in the act of bankruptcy, and, gives the assignee a right of action to recover the money or property paid or transferred contrary to the act, by means of an act of bankruptcy. But it does not declare that a judgment or other act which is to be deemed an act of bankruptcy on the part of the debtor, is also to be held void as a judgment. Sections 35 and 39 must be taken together. The one defines an act of bankruptcy, and the other declares when and under what circumstances acts done or suffered by the debtor shall be void.

So far, then, as the bankrupt act is concerned, this judgment is valid, because not given within six months before the filing of the petition by the bankrupt. In other words, neither Fuller nor any of his creditors having petitioned to have the debtor adjudged a bankrupt, within six months from the confession of this judgment, it is cured by lapse of time.

This injunction was allowed without argument, and at the time I had an impression that the judgment was void under the Code, because the confession did not sufficiently state the facts out of which the indebtedness arose. There can be no question of the insufficiency of the statement, but upon examination of the subject, I am satisfied that the judgment is not therefore void. In Miller v. Earle, 24 N. Y. 110, the question was as to the effect to be given to a judgment like this, and the court said: "As between the parties themselves, however, the judgment confessed should be held legal and valid; that being so, the levy and sale of property under it was good as against the defendant, and all the world, except judgment creditors existing and having a lien upon his property."

In Lee v. Figg, 37 Cal. 336, the same question arose in relation to a judgment confessed in 1851 upon a defective statement by Barton Lee in favor of Henley & Hastings. Sawyer J., delivering the opinion of the court, said: "The judgment is good as between Henley & Hastings and Barton Lee, and was only subject to be attacked for fraud by creditors of Lee, who were defrauded thereby, and that in some direct proceeding before a sale of the property under it to innocent parties."

It is shown by these authorities, that a judgment, though confessed upon a defective statement, is not absolutely void, but only so, as to creditors who have a lien upon the property sought to be affected by the judgment. Indeed, in Lee v. Figg, supra, the learned judge maintained, that even as against lien creditors, the insufficiency of statement is only prima facie evidence of

fraud, and that it was admissible to support the judgment by proof that the transaction was in good faith and the judgment confessed upon an actual existing debt.

At or before the filing of the petition it does not appear that any of the creditors of the bankrupt had a lien upon the property affected by this judgment, and therefore they were not then in a condition to question its validity. Nor does it appear that they have since obtained a specific lien thereon by judgment, or the like; but I think the act must be construed as giving the creditors who prove their debts, from and after the filing of the petition, such a direct interest in the property or assets of the bankrupt as to enable them, or the assignee for them, to attack such a judgment by suit as fraudulent in law or fact.

The judgment against the bankrupt having, by lapse of time, become valid, so far as the bankrupt act is concerned, Smith has acquired a lien thereby upon the real property in question. Upon the application of parties interested, this court has jurisdiction to ascertain and liquidate this lien (Bankrupt Act, § 1), and while so doing, to enjoin Smith from enforcing the same by execution out of the state court. But after the process of the state court has been executed, and the property sold thereon, it is too late for this court to interfere. The purchaser at such sale acquires a good title, and this is so, even if the judgment was fraudulent, provided the purchaser was an innocent one. For this reason, as well as upon general principles, this court could not set aside the sale upon the process of the state court and order the property re-sold, however apparent it may be that it was sold much below its real value. The remedy was in the state court, upon objections to the confirmation of the sale.

It is not necessary now to consider whether the assignee may maintain action to recover the proceeds of this property upon the ground that the judgment was void under the Code. This injunction is not ancillary to any suit for that or other purpose, but was allowed under section 40, to prevent "any person from making any transfer or disposition of the debtor's property" pending the petition to have the debtor adjudged a bankrupt. Here, however, there seems to be, at best, only a right of action in the assignee to recover these proceeds as money had and received to his use. It may also be questioned whether the injunction allowed by section 40, extends to a case of voluntary bankruptcy.

Objection is also made against this judgment that it is usurious. This objection is predicated upon the stipulation in the judgment that the accruing interest should bear interest if not paid annually. There can be no doubt but that this provision shows that it was intended that this judgment should draw more than the legal rate of interest.

But I do not think a judgment or decree can become usurious by any such means. The Code provides the rate of interest a judgment shall bear and the parties cannot change it by stipulations or terms inserted therein. Such stipulations are simply void—as, for instance, that the interest accruing on a judgment shall be paid annually, and if not shall bear interest as principal. The payment of a judgment confessed for a sum due may be enforced by execution, but if the creditor neglects or forbears to use this remedy he cannot recover interest on interest accruing in the meantime. Besides, in this case this stipulation never was attempted to be enforced, as the property was sold on the execution long before the expiration of the first year after the entry of judgment.

As to the money arising from the sale of the 640 acre tract, on December 24, I think the injunction was improperly allowed, and so far it must be dissolved and the assignee left to pursue such remedy in the premises, if any, as he may be advised that he has. As to the 23 acre tract a dissolution of the injunction is not asked for. There can be no doubt but that the court had power to enjoin the attempted sale of this property, but whether there is any sufficient reason for its continuance may be a question. This may depend upon whether the assignee may feel warranted in beginning a suit to set aside the judgment on the ground of fraud. If the judgment should be set aside on that ground, this tract of land would be discharged from the lien and become a part of the general assets of the bankrupt.

As to the $50.50 made on the execution on December 2, by the sale of personal property, it belongs to the estate of the bankrupt. The judgment gave Smith no lien upon the personal property of his debtor, and the filing of the petition in bankruptcy, on December 18, and the subsequent adjudication, avoided the lien of the levy made on November 20 previous.