[No. 20558. In Bank. — December 12, 1889.]

THE PEOPLE, RESPONDENT, *v.* W. H. STONE, APPELLANT.

CRIMINAL LAW — HOMICIDE — SELF-DEFENSE — FORCIBLE INVASION OF POSSESSION — RIGHT TO HARVEST CROP. — The evidence does not warrant a conviction of murder in the second degree, or of any other offense, where it appears that the person accused of murder was, and had been for a number of years, in the actual and peaceable possession of land which he claimed to own, and was about to harvest a crop which he had sown upon the land, when his possession was invaded by deceased, who attempted by force to prevent the harvesting of the crop, claiming that his wife had title to the land, and was shot after placing the lives of the defendant and his son in imminent peril, though it further appears that defendant and deceased had each made threats against the life of the other if he attempted to enter upon the land and cut the grain, and that each went upon the land armed to effectuate his purpose, and though it is uncertain whether defendant or deceased fired the first shot. The deceased was the aggressor from the beginning, conceding that his wife had a valid title to the land, since he had no right by force to invade defendant's possession, or to attempt by force to prevent the harvesting of his crop; and the killing of the deceased by the defendant under the circumstances was justifiable as matter of law. (BEATTY, C. J., dissenting, holds that the jury may properly have found the case to be one of mutual combat, voluntarily entered into under circumstances insufficient to justify either party in a homicide.)

APPEAL from a judgment of the Superior Court of San Benito County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Montgomery & Scott, W. H. Webb,* and *T. H. Laine,* for Appellant.

*Attorney-General Johnson, N. C. Briggs, M. T. Dooling,* and *J. H. Campbell,* for Respondent.

WORKS, J.—The appellant was charged with the crime of murder, convicted of murder in the second degree, and sentenced to the state prison for ten years.

The main contention on this appeal is that the evidence was insufficient to warrant a conviction for any offense. We have examined the evidence carefully, and find the facts as shown by the undisputed evidence for both the people and the defendant to be that the defendant was in the possession, and had been for a number of years, of a certain tract of land, and claimed to own it; that the wife of the deceased also claimed a part of it as government land on which her grantor had filed and received a certificate of purchase, it being a part of a larger tract, the balance of which was in the pre-emptor's possession under his claim; that shortly before the killing of the deceased the party under whom she claimed had run a wire fence across the land without the knowledge of the defendant, thereby cutting off the part of the land claimed by the deceased from the balance of the land in possession of the defendant; that this piece of land so cut off had been sown to grain by the defendant, which was about ready to harvest; that the defendant and the deceased had each made threats against the life of the other, if he attempted to enter upon the land and cut the grain; that on the day of the shooting the defendant was about to enter upon the land through said wire fence, and had cut the same for the purpose of passing through with his header-wagon; that the deceased met him at the gap, and forbade him passing through, and told him if he did it was at his peril, and defendant

told deceased he would pass through, that the header was coming, and that if he stood there until it came up he did so at his peril; that the deceased stepped forward and stooped down as if in the act of closing up the gap, when the defendant moved forward within a few feet of him and forbade it; that the deceased at once drew his pistol, when a son of the defendant jumped between the parties and seized the deceased around the body, when the deceased fired, inflicting a severe wound on the defendant, and then turned his pistol on the son, who was still struggling with him, and fired two shots at him, wounding him first in the leg, and then in the eye; that after the deceased had drawn his pistol the defendant drew his, and fired several shots at the deceased, some of which took effect and caused his death.    Whether the first shot fired by the defendant was immediately after the first shot of the deceased, or after he had shot and wounded the son, is not clear.    The defendant and his son both testified that the former did not fire until after the former was wounded, and the latter was twice shot and wounded. A number of other eye-witnesses, some of whom were called for the prosecution, testified that the deceased drew his pistol first, and fired first, but they could not tell who fired the following shots, or at what times, or by which one of the shots either of the parties was wounded. There was evidence tending to show that the defendant had, both before and after the shooting, used language indicating ill-will toward the deceased.    There was also evidence admitted tending to show that the wife of the deceased had title to the land in dispute, and that the defendant had not.

We have been unable to discover any evidence in the record which would warrant a conviction of murder in the second degree, or any other offense.    The defendant was in the actual and peaceable possession of the land, and had a crop growing on it that he was about to harvest.    This the deceased attempted by force to prevent.

This he had no right to do, conceding that his wife had a valid title to the land. He was, therefore, the aggressor from the beginning. He had put the lives of both the defendant and his son in imminent peril before he was fired upon. However deplorable the result may have been, he alone was responsible for it. The evidence shows conclusively that he had gone there for the purpose of preventing the defendant from going on the land. The acts of the defendant were strictly in the defense of himself and his son, and as a matter of law he was justified. The fact that the defendant had gone there armed was wrong in itself, and a circumstance against him, but it could not overcome the undisputed facts showing his acts to have been justifiable.

There are other questions presented, but they are of minor importance, and need not be considered.

Judgment and order reversed, and cause remanded.

THORNTON, J., and SHARPSTEIN, J., concurred.

Fox, J., concurring.—I concur in the judgment. The evidence clearly shows that the fifteen or sixteen acres which the wife of deceased claimed as being a part of her pre-emption was within the inclosure of defendant; that defendant had been in the actual possession of it, in a common field with other lands held by him, for eighteen years; that he had sown it and the whole field with grain, which was nearly ready to harvest, when some one ran a fence, consisting of two wires, stretched upon pickets, set fifteen or eighteen feet apart—a mere sham of a fence—through his field, cutting off from the rest the sixteen acres claimed by the wife of deceased. It further shows that when defendant had finished heading the balance of his grain he undertook to go through this wire fence with his headers to harvest that sixteen acres. He was as fully in possession as he had ever been, and had a right to harvest that crop. When he had reached the fence, and his header was about to pass

through, the deceased came up on a gallop and undertook to prevent it. In the combat that ensued (which in one sense may be called a mutual combat), the evidence is clear and positive that the deceased was the assailant. He had drawn his pistol and fired at least two shots, one at the defendant and one at his son, both of which took effect, before the defendant fired upon him. The firing then became mutual, and both fired until their pistols were empty. When defendant commenced firing he was already smarting under the sting of a severe and dangerous wound, and saw the blood flowing from a wound in the head of his son (whose whole effort in the case had been to prevent a collision), and an effort being made to again fire upon the son.

Not being the aggressor, the defendant was not bound to retreat or decline further struggle. He was an old man, seventy years of age, at first acting in defense only of his own property, without the use of deadly weapons, and when attacked, acting in defense of his own life and of that of his son. In my judgment, it is clearly a case of justifiable homicide, under section 197 of the Penal Code.

BEATTY, C. J., dissenting.—I cannot concur in the view that the verdict of the jury in this case is wholly unwarranted by the evidence.

It is not clear that the defendant, at the time of the homicide, was in the peaceable and exclusive possession of the disputed premises. Deceased, or those he represented, had at least a scrambling possession; not such a possession, certainly, as would have justified him in resorting to extreme measures in the attempt to defend it, but certainly a show of possession backed by a claim of right. He was standing on the land, at a gap in the fence, where he had gone armed with a deadly weapon, determined to prevent the defendant from entering. The defendant, equally armed and equally determined,

accompanied by his son, approached with the manifest purpose of going on the land to harvest the crop. The parties were bitter and open enemies. Each had insulted and threatened the life of the other, and each at the time plainly declared to the other what his present purpose was,—the one to enter, the other to resist his entry. Each also plainly notified the other that he would act at his peril.

Immediately ensuing these mutual threats, pistols were drawn on both sides, and the firing commenced. The preponderance of the evidence certainly is that deceased drew first,—though this is not perfectly clear,—and all the evidence is that he fired first, though not until defendant's son was in the act of seizing him.

After the struggle commenced, neither party had an opportunity to withdraw, or to notify his adversary that he declined further contest, and probably neither party desired to do so. The natural and inevitable result was the death of one of the combatants.

Under these circumstances, it seems to me that the jury may well have found that the case was one of mutual combat, voluntarily entered upon under circumstances insufficient to justify either party, and therefore that the defendant's plea of self-defense, or defense of his son, could not avail him, he and his son having entirely failed to manifest the slightest wish to withdraw from the combat before its fatal termination.