(June 22, 1904.)

## FIRST NATIONAL BANK OF HAILEY v. GLENN.
### [77 Pac. 623.]

MORTGAGE—ACKNOWLEDGMENT BY MARRIED WOMEN—EVIDENCE OF NO-
TARY—SIGNATURE BY MARK—WITNESS TO SIGNATURE BY MARK—
ADOPTION OF SIGNATURE—USURY—AGREEMENT TO PAY TAX ON
LOAN—VOID CONTRACT—CLAIM AGAINST ESTATE OF DECEASED—
ALLOWANCE OF MORTGAGE INDEBTEDNESS—MORTGAGEE MAY FORE-
CLOSE.

1. Where a notary explains to a married woman that the instrument to which her name is appended is a mortgage upon certain real estate, and the nature and contents thereof, and the property encumbered thereby, and she thereupon replies that whatever her husband does or says is all right with her and that he is a good man and she has confidence in him, and will do whatever he does, *held,* that such facts constitute a sufficient acknowledgment and justify the notary in attaching his certificate of acknowledgment in due form to such instrument.

2. Where a married woman acknowledges an instrument in due form, and at the time of such acknowledgment her name is affixed to such instrument as follows: "Jennie X Glenn," but her signature by mark is not witnessed by any person writing his name as a witness thereto, *held*, that by such acknowledgment she adopted and approved the signature as her own and thereby acknowledged the execution of the same as her act; and the officer's certificate of her acknowledgment attached thereto is a sufficient witnessing of her signature by mark and constitutes a compliance with section 16, Revised Statutes, which provides that "Signature or subscription includes mark, when the person cannot write, his name being written near it, and witnessed by a person who writes his own name as a witness."

3. An officer cannot lawfully take the acknowledgment to an instrument of a person whose name is not at the time affixed to the instrument, and does not appear thereon.

4. Under section 2960, Revised Statutes, an acknowledgment to the execution of an instrument carries with it an adoption of the signature thereto, and recognition of the same as the name and signature of the person making such acknowledgment.

5. A notary who has taken the acknowledgment to a mortgage should not be allowed to give testimony upon the foreclosure thereof impeaching, or tending to impeach, his certificate of acknowledgment.

6. The certificate of acknowledgment to an instrument made by the officer constitutes his official statement and declaration made at the time of the act as to the truth and accuracy thereof, and is more likely to be true and correct than the memory of such person in years afterward.

7. Where a mortgage provided that a debt should draw interest at the highest legal rate permissible at the time of the execution thereof, and in addition thereto provided that the debtor should pay the taxes on the mortgage and debt secured thereby, *held*, that such stipulation for the payment of taxes on the loan did not taint the contract with usury; since section 1425, Revised Statutes, provided that "Every contract by which a debtor agrees to pay any tax or assessment on money loaned, or any mortgage, deed of trust, or other lien, shall as to such tax or assessment, be null and void."

8. An action may be maintained in the district court for the foreclosure of a mortgage upon real estate where the mortgagor is deceased, although the debt secured by the mortgage has been presented as a claim to the administrator and allowed by him and

also by the probate judge of the county, where the only object of the action is to make the debt out of the mortgaged property, and the creditor waives all recourse against any other property of the estate of the deceased.

9. Section 5470, Revised Statutes, which provides that "No holder of any claim against an estate shall maintain any action thereon, unless the claim is first presented to the executor or administrator except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against any other property of the estate is expressly waived in the complaint," does not constitute any bar to the foreclosure of a mortgage by the holder thereof against the estate of a deceased person although the claim thereby secured has been duly and regularly presented to the administrator for allowance.
(Syllabus by the court.)

APPEAL from the District Court of the Fourth Judicial District. Honorable Kirtland I. Perky, Judge.

The First National Bank of Hailey, as assignee and owner and holder of the mortgage against the estate of G. P. Glenn, deceased, and others, commenced its action for the foreclosure thereof. Judgment was entered for the defendants, and from such judgment and an order denying a motion for a new trial, plaintiff appeals. Judgment reversed.

R. F. Buller, for Appellant.

The notary's certificate of acknowledgment cannot be impeached by his own evidence. (*Shapleigh v. Hull,* 21 Colo. 419, 41 Pac. 1108; *Northwestern etc. Bank v. Rauch,* 5 Idaho, 752, 57 Pac. 766.) This evidence was also inadmissible, for the further reason that there was no allegation of fraud, accident or mistake in taking and certifying the acknowledgment of the mortgage. In the absence of fraud, accident or mistake, the certificate of the notary in due form is conclusive of the material facts therein stated. (*Banning v. Banning,* 80 Cal. 271, 13 Am. St. Rep. 156, 22 Pac. 210; *Grant v. White,* 57 Cal. 141; *Baldwin v. Snowden,* 11 Ohio St. 203, 78 Am. Dec. 303; Jones on Mortgages, 538.) Public policy requires that the certificate should prevail over the unsupported testimony of an interested party, otherwise there would be no permanency and but slight.

security in titles to lands.   (*Gray v. Law,* 6 Idaho, 559, 96 Am.
St. Rep. 280, 57 Pac. 435; *Russel v. Baptist Theological Soc.,*
73 Ill. 337.)   In *Clough v. Clough,* 73 Me. 487, 40 Am. Rep.
386, where the grantor's name was written by the grantee and
the grantor subsequently acknowledged the deed, the court said:
"If one acknowledges and delivers a deed which has his name
and seal affixed to it, the deed is valid, no matter by whom the
name and seal were affixed.   The acknowledgment and delivery
are acts of recognition so distinct and emphatic that they will
preclude the grantor from afterward denying that the signing
and sealing were his acts.   They are his by adoption."   (9 Am.
& Eng. Ency. of Law, p. 145, and cases cited.)   At the time this
mortgage was made mortgages were taxable in Idaho, and the
same revenue law which made them taxable also contained sec-
tion 1425, which says: "Any agreement made by a mortgagor
to pay the taxes assessed upon the mortgage shall be void."   The
law of usury is in its nature penal, and is therefore to be strictly
construed.   Reason and justice dictate that the forfeiture im-
posed by it ought not to be visited upon those who are innocent
of any intention of violating its provisions.   (*Dickerson v. Day,*
31 Iowa, 444.)   In *Balfour v. Davis,* 14 Or. 47, 12 Pac. 89, it
is said that in order to constitute usury there must be a corrupt
intent to take more than the legal rate of interest for the use
of the money loaned.   We submit that there was no corrupt in-
tent, nor any intent whatever, not even a contract; nothing
but a void clause in the mortgage, inserted, for aught that ap-
pears by the mortgagors themselves, without even the knowledge
or consent of the mortgagee.   Where the holder of the mort-
gage does not present his claim against the estate, his recourse
is limited to the mortgaged property.   (*McGahey v. Forest,* 109
Cal. 63, 41 Pac. 817.)   If a mortgage is executed by husband
and wife upon a homestead which is afterward set apart to the
surviving spouse, the mortgagee can neither maintain his action
to foreclose nor have a personal judgment against the survivor
unless he first presents his claim against the estate of the de-
ceased spouse.   (*Hibernia Sav. etc. Soc. v. Thornton,* 109 Cal.
427, 50 Am. St. Rep. 52, 42 Pac. 447; *Bull v. Cole,* 77 Cal.
54, 11 Am. St. Rep. 235, 18 Pac. 808.)   If the administrator
improperly pays out money of the estate to remove an encum-

brance, he does so at his own risk, and if any loss accrues he must bear it. (*In Matter of Estate of Knight,* 12 Cal. 200, 73 Am. Dec. 531; *In re Huelsman's Estate,* 127 Cal. 275, 59 Pac. 776.)

W. C. Howie, for Respondent.

It is alleged by both plaintiff and defendant, and proven in the evidence, that G. P. Glenn and Jennie Glenn were husband and wife, and is conceded that they were living on the land as a home. Then under section 2921, Statutes of 1887, the land could not be conveyed or encumbered unless both husband and wife joined in the execution of the instrument. Execution includes signing, sealing and delivering. (1 Bouvier's Law Dictionary, 714; 11 Am. & Eng. Ency. of Law, 2d ed., 584; *Pico v. Carillo et al.,* 7 Cal. 30; *In re Will of Bridget Guilfoyle,* 96 Cal. 598, 31 Pac. 553, 22 L. R. A. 370; *Watson v. Billings,* 38 Ark. 278, 42 Am. Rep. 1.) Courts universally hold in the matter of acknowledgments, if the certificate is wholly false and the supposed grantor has done nothing active herself to hold out to the world that it is genuine by which she can be bound by estoppel, the certificate is the same as forged and the instrument void in the hands of everybody. (*Le Mesnager v. Hamilton,* 101 Cal. 532, 40 Am. St. Rep. 81, 35 Pac. 1054; *Phillips v. Bishop,* 31 Neb. 853, 48 N. W. 1106; *Harrison v. Oakman,* 56 Mich. 390, 23 N. W. 164.) In *Vermont Loan etc. Co. v. Hoffman,* 5 Idaho, 376, 95 Am. St. Rep. 86, 49 Pac. 414, 37 L. R. A. 509, where the rate of interest charged was but six per cent when the statute permitted eighteen per cent, and the only thing was that the coupons should draw interest at six per cent, can it be claimed that the mortgagee wanted to charge more than the legal rate? Yet the court imposed all the penalties of our usury law; besides at the time the contract was entered into over half the lawyers in the state were of the opinion that interest bearing coupons were legal. That it makes no difference under what or how many names or guises the money taken may be, it will not evade the usury law. See this court's decision in *Stevens v. Home Savings etc. Assn.,* 5 Idaho, 741, 51 Pac. 779; *Fidelity Sav. Assn. v. Shea,* 6 Idaho, 405, 55 Pac. 1022. And for other authorities along the same line see *Harmon v.*

*Lehman,* 85 Ala. 379, 5 South. 379, 2 L. R. A. 589; 27 Am. & Eng. Ency. of Law, 1st ed., 1009 (bonus added to interest), 1017 (rents), and 1021-1026. (*Walter v. Foutz,* 52 Md. 147; *Andrews v. Poe,* 30 Md. 485; *Harris v. Wicks,* 28 Wis. 198; *Hewitt v. Dement,* 57 Ill. 500.) The provision that debtor will pay the taxes on the debt secured, in addition to the full legal rate, renders the contract usurious. (*Mortimer v. Prichard,* 1 Bail. Ch. (S. C.) 505 (new ed., 496); *Meem v. Dulaney,* 88 Va. 674, 14 S. E. 363; 27 Am. & Eng. Ency. of Law, 1st ed., 1015; 3 Parsons on Contracts, 128; *Marsh v. Martindale,* 3 Bos. & P. 154; *Maine Bank v. Butts,* 9 Mass. 49.)

AILSHIE, J.—The First National Bank of Hailey commenced this action on the twenty-fourth day of July, 1895, for the foreclosure of a real estate mortgage excuted by Oliver S. Glenn and Emma Glenn, his wife, and G. P. Glenn and Jennie Glenn, husband and wife. The mortgage was executed on the twenty-seventh day of July, 1887, to secure the payment of three promissory notes aggregating the sum of $8,733, and bearing interest from August 1, 1888, at the rate of one and one-half per cent per month in favor of H. E. Miller. Miller sold and transferred the notes and mortgage to appellant, prior to the commencement of this action. At the time of the execution of the notes and mortgage, G. P. Glenn and wife were residing upon that portion of the land upon which the foreclosure was sought in this action, and the same was at that time the community property of the husband and wife. In 1889, G. P. Glenn died intestate, leaving his widow, Jennie, and six children surviving him. Payments had been made on the mortgage indebtedness from time to time, and after the death of G. P. Glenn, the mortgagee Miller, duly and regularly presented his claim for the amount due in principal, interest and taxes to the administrator of the estate, and the same was thereupon allowed by the administrator and also by the probate court of Elmore county. After the allowance of the claim the administrator paid something over $2,000 thereon. Under the statute as it existed at the time of the execution of this mortgage it was lawful to charge and collect interest at the rate of one and one-half per cent per month. It was also the law at that time that all mortgages were taxable; and under section 1425 of the Revised Stat-

utes then in force it was provided that: "Every contract by which a debtor agrees to pay any tax or assessment on money loaned, or any mortgage, deed of trust, or other lien, shall as to such tax or assessment, be null and void." By the terms of the notes and mortgage given in this case the debtors contracted to pay the highest legal rate of interest permissible under the laws of the then territory; and, in addition thereto, it was provided that the debtors should pay all taxes that might be assessed against the mortgaged property and also all taxes that might be assessed against the mortgage itself, or the debt secured thereby. Personal service was made upon all the defendants, and also upon the guardian for the six minor children of the deceased, G. P. Glenn. The action was dismissed as to Oliver S. Glenn and Emma Glenn, owing to their having no interest in the land, and the default of Jennie Glenn was duly and regularly entered. The minors, however, all appeared through their guardian and answered, and contested the action at every step of the proceedings and are the respondents in this action. The answer denies the execution of the mortgage by the defendant Jennie Glenn. It also alleges that she never acknowledged that instrument in any manner or form. It also sets up the defense of usury and charges that the contract was a usurious contract. It was further alleged as a separate defense that the claim had been presented to the administrator of the estate of G. P. Glenn, deceased, and that part payments had been made thereon, and that the mortgagee was thereby barred from maintaining his action upon the contract and to foreclose the mortgage.

The case was tried before the judge of the fourth judicial district sitting in Elmore county; but before it was finally submitted upon that trial, the judge, Justice Stockslager, now of this court, who heard the testimony, was succeeded by Judge Perky, and the case was therefore retried and judgment was entered November 14, 1902. Soon thereafter one of the plaintiff's attorneys died and the case had slow progress in getting into this court. The trial judge found that the mortgage was never executed by the defendant Jennie Glenn, and that the execution thereof was never acknowledged by Jennie Glenn. He also found that the contract was usurious and that the principal of the loan had been fully paid and judgment was thereupon en-

tered dismissing the action and for costs against the plaintiff. Since the court found that the mortgage was never executed nor acknowledged by the defendant, Jennie Glenn, we will consider both of these questions together. The mortgage which was introduced in evidence appeared to have been executed in due form and by all the parties, except by the defendant Jennie Glenn. Her name was affixed to the mortgage as follows:

"Jennie X Glenn," but this signature by mark was not witnessed by any person writing his name as a witness thereto. Her acknowledgment, however, as shown by the certificate of the notary who took the same, seems to have been duly and regularly made and taken. At the trial she appeared and testified as a witness on behalf of the minor children who were defending, and testified that she never signed her name to the mortgage and that she never made her mark, and that she never saw the mortgage. She also denied acknowledging the same, but did admit that the notary came to see her about the matter, and claims that she did not understand anything about it. It should be observed that she is an Indian woman, and while she speaks the English language fairly well and appears to understand it reasonably well, as disclosed by her answers given on the witness-stand, still, like most of her people, she did not fully grasp all that was said to her, and especially business methods and ordinary legal proceedings. Other witnesses who were about the house at the time the notary came to take this acknowledgment, testify to his being there and having the mortgage with him, and going over and sitting down by the table or desk where she was seated and explaining to her the contents and nature of the mortgage, and that she replied in substance that whatever her husband would do she would do, saying: "But Gus Glenn, he good man, and what Gus say and do I say and do all right." The defendants at the trial called the notary who took the acknowledgment and examined him with a view to contradicting his certificate and showing that no real acknowledgment had ever been taken from this woman. The plaintiffs objected to the notary testifying to any fact that would in any manner tend to impeach his certificate, but the court overruled the objection

and permitted the testimony. We think the objection by the plaintiff was well taken. No notary should be allowed to come into court upon the foreclosure of a mortgage and give testimony impeaching his certificate to the mortgage which is being foreclosed. In the first place, the certificate is made at the time of the acknowledgment and is the solemn declaration of the officer in his official capacity, under his hand and seal, as to the truth and accuracy of the statements it contains, and it is much more likely to be true and correct than the memory of the person in years afterward. This case is a practical illustration of the danger of allowing an official to come in and contradict his own certificate at a period in this case of more than fourteen years after it was made. After persons have relied upon the faith and correctness of his official statement and invested their money and rights have grown up thereunder, the person who acted as such official and made such certificate should not be heard in a court of justice disputing its correctness. (*Shapleigh v. Hull,* 21 Colo. 419, 41 Pac. 1108; *Northwestern etc. Bank v. Rauch,* 5 Idaho, 752, 51 Pac. 764; *Hockman v. McClanahan,* 87 Va. 39, 12 S. E. 230; *Hawkins v. Forsyth,* 11 Leigh, 301; *Central Bank of Frederick v. Copeland,* 18 Md. 305, 81 Am. Dec. 597; *Johnson v. Wallace,* 53 Miss. 331, 24 Am. Rep. 699.) In this case, however, the evidence of the notary was as much in support of the certificate as in contradiction thereof. He testified to explaining to the witness the contents of the instrument and its purpose and effect, and that, while she did not appear to understand it very well, she told him it was all right with her if it was with her husband, and that whatever he did or said was all right with her. He also testifies that after going over the matter, making as full explanation as he could, and conversing with her about it, he considered she had made a sufficient acknowledgment of the execution of the instrument and that she was satisfied therewith, and that he felt justified in attaching the certificate of acknowledgment thereto. We think his conclusion was correct, and that he was justified in so certifying. (*Banning v. Banning,* 80 Cal. 273, 13 Am. St. Rep. 156, 22 Pac. 210; *De Arnaz v. Escandon,* 59 Cal. 489.) The record here shows that the wife reposed perfect confidence in her husband and was entirely satisfied with whatever

he said and did in business matters. We think an acknowledgment to this effect is a compliance with the statute. (*Northwestern etc. Bank v. Rauch, supra; Gray v. Law,* 6 Idaho, 559, 96 Am. St. Rep. 280, 57 Pac. 435.)   More especially should this be true where, as in this case, it is admitted that the husband and the family of which he was the head received the full consideration for which the mortgage was executed, and there is no pretense or contention that any fraud or deception was practiced upon either the wife or husband. It further appears in this case that the money for which this mortgage was executed was received and used by Glenn and his wife in redeeming this identical tract of land from a sheriff's sale on foreclosure of a previous mortgage, and that the time for redemption was just about expiring. The money, therefore, sought to be recovered in this action is, practically speaking, the purchase price for the tract of land. This brings us to the question of the signature to the mortgage by the defendant Jennie Glenn.

Section 16 of the Revised Statutes which is devoted to definitions of various words and phrases used in the statutes defines a signature as follows: "Signature or subscription includes mark, when the person cannot write, his name being written near it, and witnessed by a person who writes his own name as a witness." It is argued by respondent that under this statute Jennie Glenn's "signature" does not appear to the mortgage, since it is shown on its face to have been made by mark and there is no witness thereto. We think this contention would be correct if the signature were found in this condition to an unacknowledged instrument, or one that is not required by law to be acknowledged. But by the provisions of section 2921, Revised Statutes, it is provided that the community property occupied as a residence cannot be encumbered "unless both husband and wife join in the execution of the instrument by which it is so . . . . encumbered, and it be acknowledged by the wife, as provided in chapter 3 of this title." Section 2960 as found in chapter 3 referred to in section 2921, *supra,* provides the form of acknowledgment to be made by a married woman to an instrument affecting title to real property in which she has any interest. An examination of the acknowledgment will disclose that an officer is required to certify that "the person whose

name is subscribed to the within instrument, described as a married woman," personally appeared before him and that, "upon examination without the hearing of her husband, I made her acquainted with the contents of the instrument, and thereupon she acknowledged to me that she executed the same and that she does not wish to retract such execution." It is clear that an officer would not be justified in taking and certifying an acknowledgment of any person to an instrument whose name is not affixed to the instrument and does not appear thereon; and it is equally clear that in order to make a good acknowledgment the person executing the instrument must adopt the name appearing thereon and the execution thereof as his or her own. The officer taking the acknowledgment is not required to see the person sign the instrument, nor is he required to witness the instrument; but he is required to ascertain whether or not the party acknowledges the instrument as his or her obligation or contract and as having been executed by him or her. All these things appear from the certificate in this case to have been done regularly. The name of Jennie Glenn appeared subscribed to the instrument; whether by her, her husband, or some other person, she approved of it, adopted it and acknowledged it as her own. (See *Bartlett v. Drake,* 100 Mass. 174, 97 Am. Dec. 92, 1 Am. Rep. 101; *Clough v. Clough,* 73 Me. 487, 40 Am. Rep. 386; *Harris v. Harris,* 59 Cal. 620; *Kerr v. Russell,* 69 Ill. 666, 18 Am. Rep. 634.) To "execute" an instrument, it is true, includes signing it; but the admission by a party whose name is appended to an instrument that he executed it is as binding upon the party contracting as if the person to whom the admission is made had seen him affix his name thereto. Such admission becomes legal evidence of the fact. We therefore conclude that the notary's certificate, that the party whose name is affixed acknowledged the execution of the instrument, is as good a witness to the signature by mark as if he had written his name at the foot of the document "as a witness to her signature by mark." In a case like this where there is no charge of deception or fraud, and where it is not denied that the contracting parties received and enjoyed all the fruits of their contract and the full consideration therefor, it would be an injustice to allow a recovery to be defeated in a court of equity by reason of such

a slight deviation from the forms usually recognized and followed.

We next come to appellant's contention that the court erred in finding that the contract was usurious. This finding was predicated upon the clause found in the mortgage providing that the debtors should pay taxes on the mortgage and the debt secured thereby. The defendants maintained that, since the mortgage was drawn for the highest legal rate of interest permissible, a stipulation for the payment of taxes on the mortgage in any sum whatever had the legal effect of raising the rate above that allowed by law, and therefore brought the contract within the provisions of section 1266, Revised Statutes, and made it usurious. In support of this proposition respondent has cited *Mortimer v. Prichard,* 1 Bail. Eq. (S. C.) 505, and *Meem v. Dulaney,* 88 Va. 674, 14 S. E. 363. In *Mortimer v. Prichard,* the South Carolina court held that where a contract provided for the highest rate of interest and also provided for the debtor paying the state and city taxes, upon its face it would appear usurious, but that where, as in that case, it appeared that the parties acted in good faith and had taken the advice of counsel as to the legality of such a contract, there was no corrupt intent, and the court held the contract legal. In *Meem v. Dulaney,* the Virginia court of appeals held a contract very similar to the one at bar usurious.

In *Banks v. McClelland,* 24 Md. 62, 87 Am. Dec. 594, the supreme court of Maryland in the syllabus to that case say: "An agreement by the mortgagor to pay the taxes on the mortgage debt is not usurious," and the question of usury in such a case is there held to depend upon the particular circumstances of the case. We find that in none of the cases cited by respondent on this question has there been a statute similar to ours declaring such stipulations void.

Since section 1425, as it stood when this contract was entered into, provided that every contract whereby the debtor agreed to pay the taxes on the money loaned or the mortgage was null and void, the stipulation, therefore, found in this mortgage was never such as could be enforced. If "null and void," it could never have had any life or vitality in it. If void from the beginning, it is difficult to see how it ever obtained the energy

or ability to taint an otherwise legal contract with usury. This statute carried within itself its own penalty for its violation,. namely, that the contract should "be null and void." To allow a stipulation which the statute says should be void from the be-- ginning, to have the effect of corrupting the whole contract in: which it is found and subject it to the penalties for usury, would: be attaching a double penalty to a statute which carries its own. penalty with it. It is also worthy of observation that the usury statute of this state does not declare the usurious contract void,. but rather imposes a penalty upon both the debtor and creditor.. If the contract under consideration were usurious, it would have been the duty of the trial court, not only to declare the penalty against the lender, but also the borrower; and we are not pre- pared to say that the borrower by inserting a stipulation in his mortgage which the statute says is void, thereby subjects himself to the penalty of a usury statute. On the other hand, the mort- gagee in this case testifies that he never knew such a stipulation was in the mortgage until long after its execution, and that he never at any time collected such a tax from the mortgagors,. nor did he ever charge them therewith.

In *Re Press Fuller,* 1 Saw. 243, Fed. Cas. No. 5148, a judg- ment had been entered by confession and provided for a greater rate of interest than allowed by law. It was contended that this made the judgment usurious and subjected it to the penal- ties of the usury statute. Judge Deady disposes of the usury phase of the question as follows: "There can be no doubt but this provision shows that it was intended that this judgment should draw more than the legal rate of interest. But I do not think a judgment or decree can become usurious by any such means. The code provides the rate of interest a judg- ment shall bear, and the parties cannot change it by stipula- tions or terms inserted therein. Such stipulations are simply void—as, for instance, that the interest accruing on a judg- ment shall be paid annually, and, if not, shall bear interest as principal."

We now come to the last contention made by appellant in this case. It is embodied in the following conclusion of law made by the trial court: "Plaintiff's predecessor, having presented his claim against the estate of G. P. Glenn, de-

ceased, and having received payment thereon, cannot now maintain this action." Respondent claims that this conclusion of law is justified by section 5470, Revised Statutes of 1887. The provisions of that section are as follows: "No holder of any claim against an estate shall maintain any action thereon unless the claim is first presented to the executor or administrator, except in the following case: An action may be brought by any holder of a mortgage or lien to enforce the same against the property of the estate subject thereto, where all recourse against any other property of the estate is expressly waived in the complaint." Respondent argues that if the plaintiff could not, in the first instance, maintain his action to foreclose his mortgage without expressly waiving "all recourse against any other property of the estate," then he cannot be allowed to present his claim against the estate, and, after obtaining all he can from the estate, be permitted to foreclose his mortgage, and then waive recourse against any other property of the estate. We have been cited to no authority sustaining this construction of the foregoing statute, and we have been unable to find any to that effect. In California they seem to have changed their statute on this subject from time to time, but at no time do they appear to have had a statute in the exact language of our provision. Still the courts of that state have frequently considered the right of a mortgagee to foreclose both with and without having presented his claim to the administrator and have inferentially touched upon this question in the following cases: *Fallon v. Butler,* 21 Cal. 24, 81 Am. Dec. 140; *Willis v. Farley,* 24 Cal. 500; *Moran v. Gardemeyer,* 82 Cal. 96, 23 Pac. 6; *McGahey v. Forrest,* 109 Cal. 63, 41 Pac. 817; *Hibernia Savings etc. Assn. v. Thornton,* 109 Cal. 427, 50 Am. St. Rep. 52, 42 Pac. 447; *Bull v. Coe,* 77 Cal. 50, 11 Am. St. Rep. 235, 18 Pac. 808. We do not understand the statute to be a bar to the foreclosure of a mortgage simply because the mortgagee presented his claim in due form to the administrator, but when he seeks to maintain his action to foreclose the mortgage, then under the terms of the statute he must waive all recourse against other property. It appears to be conceded by the argument of respondent, and at any rate exists as a fact, that section 5470 does not in express terms forbid the mort-

gagee foreclosing the mortgage where he has previously presented his claim to the administrator. If that section means what respondents contend it does, it is only by implication and not by express terms. We cannot, however, by mere implication give to a statute like this a meaning or interpretation which will preclude or tend to preclude the creditor pursuing his remedy in a court of equity for the foreclosure of his mortgage. (Idaho Const., art. 5, sec. 20; *Fallon v. Butler, supra; Pechand v. Rinquet,* 21 Cal. 76; *Willis v. Farley, supra; Corbett v. Rice,* 2 Nev. 331; *Verdier v. Bigne,* 16 Or. 208, 19 Pac. 64.)

The respondent makes the point that the plaintiff after having received a large sum of money from the estate on the allowance of his claim gains an advantage if he can afterward be allowed to foreclose his mortgage. This is a matter with which the administrator and probate judge have ample authority to deal. If the estate is solvent over and above the family allowances, and such homestead as may be set off by the probate judge, in that case it can make no difference to the estate or any creditor thereof for the reason that the claim should be fully paid, and there would be no occasion for a foreclosure. If, on the other hand, the estate is insolvent, the administrator should not pay and the probate court should not allow paid any secured claim except as the money therefor is made out of the encumbered property. The order of payments and preferences to be made out of an estate is directed by sections 5606 and 5607, Revised Statutes. Provision is also made for the sale of the encumbered property by the probate court where the mortgagee or lienholder has presented his claim under sections 5536 and 5537, Revised Statutes. Under these statutory provisions governing the administration of the estates of deceased persons, a mortgagee can acquire no advantage or preference by being allowed to present his claim and thereafter foreclose his mortgage. Of course he cannot foreclose his mortgage after having presented his claim, if the encumbered property is sold by order of the probate court and the proceeds thereof are applied to the payment of the mortgage debt. In such a case he would have exhausted his security and could not pursue it any further.

We therefore conclude that the plaintiff was entitled to a

decree foreclosing its mortgage, and the judgment of the lower court will be reversed. The cause is remanded with directions to the trial court to compute the amount due to the plaintiff on its mortgage, and to make findings of fact and conclusions of law in accordance with the facts proven upon the former trial and in harmony with the legal conclusions herein announced, and to enter judgment and decree in accordance therewith. Costs awarded to appellant.

Sullivan, C. J., concurs.

Stockslager, J., having heard the case at the first trial, took no part in the foregoing decision.