(August 2, 1922.)

S. D. OYLEAR, J. M. OYLEAR, G. W. OYLEAR, E. E. OYLEAR, M. M. OYLEAR, ELZIE OYLEAR, ESTEL FRANK PRINCE, EDWARD PRINCE and CLYDE PRINCE, Appellants, v. JESSE OYLEAR, HAZEL OYLEAR, DORA OYLEAR, MARY ALICE OYLEAR, and JAMES J. KEANE, Executor of the Estate of JONATHAN C. OYLEAR, Respondents.

[208 Pac. 857.]

HOMESTEAD — COMMUNITY OR SEPARATE PROPERTY — CONVEYANCES — DEVOLUTION OF HOMESTEAD PREMISES — ORAL AGREEMENT — LACHES.

  1. Where real property has been conveyed to a married woman by a deed which shows on its face a consideration paid by her, the legal presumption is that the property was purchased by community funds, and it thereupon acquired the status of community property.

  2. *Held,* that there is sufficient competent evidence in the record in this case to support the finding of the lower court that the premises in litigation had been acquired by Jonathan C. Oylear and his wife Sarah A. Oylear by their joint efforts and was community property, and that the fact of said premises having been deeded by the husband to a third party and by said third party reconveyed to the wife, did not change its character as community property.

  3. A homestead selected under the provisions of Rev. Stats. 5447 (now C. S. 7571), from the community property or from the separate property of the person selecting or joining in the selection of the same, upon the death of either the husband or wife vests absolutely in the survivor in fee simple.

4. *Held,* that upon the death of Jonathan C. Oylear, the title to the premises described in the declaration of homestead made by him vested by operation of law in his widow, Mary A. Oylear, to the exclusion of his children and grandchildren by a former marriage.

5. *Held,* that the declarations of homestead made by Jonathan C. Oylear and Sarah A. Oylear sufficiently complied with the requirements of Rev. Stats., sec. 3071, the statute in existence at the dates they were made, both as to form and as to substance.

6. Courts of equity do not favor antiquated or stale demands, and refuse to interfere where there has been gross laches in commencing the proper action, or long acquiescence in the assertion of adverse rights.

APPEAL from the District Court of the Second Judicial District, for Latah County. Edgar C. Steele, Judge.

Action for partition of real property. Judgment quieting title in respondents. *Affirmed.*

Benj. F. Tweedy and O. D. Burns, for Appellants.

The homestead declaration of Mrs. Oylear was valid. It does not recite in the words of the statute the reason why Mrs. Oylear made it, but merely states that her husband had made no declaration and that she made it for their joint benefit. (Rev. Stats., sec. 3071; *Wilcox v. Deere,* 5 Ida. 545, 51 Pac. 98.)

The execution of a homestead declaration is *ex parte* and of an *ex parte* instrument, and the statutes as to the execution and as to the contents must be strictly complied with. (*Jones v. Gunn,* 149 Cal. 687, 87 Pac. 577.)

The farm was a gift, through a trustee, to the first Mrs. Oylear, and became her separate property. (*Glover v. Brown,* 32 Ida. 426, 184 Pac. 649.)

Where the husband receives a consideration from his wife for a deed from him to her, it is a presumption of law that the land was paid for by her own separate funds. (*Taylor v. Opperman,* 79 Cal. 468, 21 Pac. 869; *Carter v. McQuade,* 83 Cal. 274, 23 Pac. 348; *Ions v. Harbison,* 112

Cal. 260, 44 Pac. 572; *Hamilton v. Hubbard*, 134 Cal. 603, 65 Pac. 321. 66 Pac. 860.)

Section 1474 of the California statutes was amended ten days later than sec. 1265 of California's Civil Code. (*Weinrich v. Hensley*, 121 Cal. 647, 54 Pac. 254.) Therefore sec. 1474 is the latest expression of the legislative will upon the subject, and supersedes the provisions thereon in sec. 1265, Civil Code. (*In re Fath's Estate*, 132 Cal. 609, 64 Pac. 995.)

All the acts contained in Rev. Statutes of 1887 were simultaneously adopted by the legislature, and for that reason alone, sec. 5447 cannot be held to "supersede" sec. 3073, found in the chapter which deals with the creation of homesteads; consequently, we are forced to disregard the California decisions, and undertake the task of harmonizing the Idaho statutes.

J. H. Forney, for Respondents.

At the time the homestead declaration was filed on the premises in controversy the same was community property of Jonathan C. Oylear and Sarah A. Oylear. (*Schuyler v. Broughton*, 70 Cal. 283, 11 Pac. 719; Platt on Property Rights of Married Women, sec. 34, p. 110; *Tillaux v. Tillaux*, 115 Cal. 663, 667, 47 Pac. 691; Rev. Stats., sec. 5712.)

The homestead declaration by Sarah A. Oylear was a valid declaration. (Rev. Stats., sec. 3971; *Mellen v. McMannis*, 9 Ida. 418, 423, 75 Pac. 98; *First Nat. Bank of Hailey v. Glenn*, 10 Ida. 224, 109 Am. St. 204, 77 Pac. 623.)

But it is wholly immaterial whether the property in question was community property or the separate property of Sarah A. Oylear at the time of making her declaration of homestead in 1891. (Rev. Stats., sec. 5447; *In re Croghan*, 92 Cal. 370, 28 Pac. 570; *In re Burdick*, 76 Cal. 639, 640; 18 Pac. 805; *In re Fath's Estate*, 132 Cal. 609, 64 Pac. 995; *Saddlemire v. Stockton Sav. & L. Soc.*, 144 Cal. 650, 79 Pac. 381.)

Jonathan C. Oylear succeeded to all the rights and benefits of Sarah A. Oylear at the time of her death in 1897. Also Mary A. Oylear succeeded to all the rights and benefits of Jonathan C. Oylear at the time of his death in 1919. (C. S., sec. 7576; *In re Fath's Estate, supra.*)

Mary A. Oylear succeeded to the homestead in 1919 on the death of Jonathan C. Oylear by operation of law. No probate administrator was necessary. The will was in harmony with and not inconsistent with the law governing the devolution of homesteads. The will gave all the property, including the homestead, to the widow. (*Rhoton v. Blevin,* 99 Cal. 645, 34 Pac. 513.) The plaintiffs, by their laches and inexcusable delay, are precluded from any relief whatever. (*Badger v. Badger,* 2 Wall. (U. S.) 87, 17 L. ed. 836; *Ryan v. Woodin,* 9 Ida. 525, 75 Pac. 261.)

BUDGE, J.—This is an action to partition certain real property, instituted in the court below by certain brothers and sisters, and children of deceased brothers and sisters, descendants of Jonathan C. Oylear by his first wife, Sarah A., against Mary Alice Oylear and certain children, descendants of Jonathan C. Oylear by his second wife, Mary Alice, and against James J. Keane, executor of the estate of Jonathan C. Oylear.

From the record it appears that on or about January 10, 1885, Jonathan C. Oylear and Sarah A. Oylear were husband and wife, and that on May 16, 1891, they were residing upon the premises involved in this litigation. Prior to June 9, 1885, Jonathan C. made a homestead entry in the United States land office upon the lands described in the appellants' complaint, and on or about January 9, 1885, made his final proof, received his final receipt, and made a warranty deed to these same lands to one E. Fix. On June 9, 1886, he received his patent from the United States. On March 3, 1885, Fix and his wife made a warranty deed to these same premises to Sarah A. Oylear, and again on December 1, 1888, made a second warranty deed to Sarah A. Oylear. Thereafter, on May 16, 1891, Sarah A. made a

declaration of homestead in which she described said premises. Jonathan C. and Sarah A. resided on these premises up until August 8, 1897, when Sarah A. Oylear died intestate. On March 8, 1898, Jonathan C. intermarried with Mary A. Oylear, with whom he resided upon these same premises, with an occasional absence, up until October 23, 1899, when he made a declaration of homestead upon these same premises, which was filed on September 6, 1900, and where he resided with his second wife, Mary A., up until his death, which occurred on February 14, 1919. Jonathan C. died testate, in Latah county, and named in his will, as his executor, one James J. Keane.

It is first contended by appellants that the conveyance of the premises described in the deeds from Jonathan C. to E. Fix and from Fix and his wife to Sarah A. vested title in Sarah A., and the same became her sole and separate property and upon her death a two-thirds interest in said premises vested in the appellants, and in the grandchildren of Jonathan C. and Sarah A., and a one-third interest in Jonathan C., and that the filing of the declaration of homestead by Sarah A. did not, as contended by respondents, vest title to the premises in Jonathan C., upon her death.

The deeds from Fix and his wife to Sarah A. upon their face express a money consideration passed to Fix from Sarah A., but do not recite that the premises so conveyed became her sole and separate property for her sole and separate use, and there is no evidence that the money consideration recited in the deed as having been paid to Fix by Sarah A. was the separate money of the latter, or belonged to her separate estate, or was not money that belonged to the community, if any money was paid at all.

In the case of *Schuyler v. Broughton,* 70 Cal. 283, 11 Pac. 719, that court says: ''Where real property has been conveyed to a married woman by a deed which shows on its face a consideration paid by her, the legal presumption is that the property was purchased by community funds, and became community property of the husband and wife; and as such it is liable for the debts of the husband. . . . . It

is true that the legal presumption which arises from the face of the deed may be overcome by extrinsic proof that the consideration paid was the separate funds of the wife . . . . ; but in the absence of such proof, the presumption is absolute and conclusive."

We think there is sufficient competent evidence to support the finding of the court that the premises in litigation and the whole thereof was acquired by Jonathan C. and Sarah A., by their joint efforts and was community property, and the mere execution and delivery of a deed to these premises by Jonathan C. to Fix, and a reconveyance by Fix and his wife to Sarah A., did not change the character of the property. It still remained community property and was such at the death of Sarah A.

If we are correct in the conclusions which we have reached upon this point, then under the provisions of Rev. Stats., sec. 5712, which was in force at the date of the execution and delivery of the deeds from Fix and his wife to Sarah A., upon the death of the latter the entire community property, without administration, vested in Jonathan C., her surviving husband.

It is wholly immaterial whether the property was community property, however, or the separate property of Sarah A., for the reason that under the law then in force, she having filed a declaration of homestead, upon her death Jonathan C. became vested with the title to the property. Rev. Stats., sec. 5447, now C. S., sec. 7571, provides: "If the homestead selected by the husband and wife or either of them, during their coverture, and recorded while both were living, was selected from the community property, or from the separate property of the person selecting or joining in the selection of the same, it vests, on the death of the husband or wife, absolutely in the survivor. . . . . "

Sec. 5447, *supra,* is identical with sec. 1474, Kerr's Code of Civil Procedure, which was construed by the supreme court of California in the case of *In re Fath's Estate,* 132 Cal. 609, 64 Pac. 995, wherein the court held that under the provisions of said section a homestead so selected vests on

35 Idaho—47

the death of the husband or wife absolutely in the survivor, and that under sec. 1485, Kerr's Code, *supra,* which is the same as C. S., sec. 7576, providing that persons succeeding by purchase or otherwise to homesteads have all the rights and benefits conferred by law on the person whose interests and rights they acquire, a wife succeeding to a homestead right by the death of her husband may dispose of the property by will, free from any claim of the creditors of either herself or husband.

Since it is undisputed that the selection of the homestead was made by Sarah A., it would be immaterial whether it was made from her separate property or from the community property.

Rev. Stats., sec. 3073, provided that: " . . . . If the selection was made by a married person from the community property; the land, on the death of either of the spouses, vests in the survivor, . . . . in other cases, upon the death of the person whose property was selected as a homestead, it shall go to his heirs or devisees, subject to the power of the probate court to assign the same for a limited period to the family of the decedent; . . . . "

This section is identical with sec. 1265 of Kerr's Civil Code. Rev. Stats., secs. 5447 and 3073, were adopted from the statutes of California, and the construction placed upon them by the supreme court of that state is highly persuasive.

In *Weinreich v. Hensley,* 121 Cal. 647, 54 Pac. 254, the court observed: "The devolution of the title to the homestead premises in case of the death of one of the spouses is provided for in section 1265, Civ. Code, and also in section 1474, Code Civ. Proc. The latter section was amended 10 days later than the section of the Civil Code, and is to be regarded as the latest expression of the legislative will."

In the case of *In re Fath's Estate, supra,* the court also said: "This section [sec. 1474, Code Civ. Proc.] in its present form is the latest expression of the legislative will upon the subject, and supersedes the provisions thereon in section 1265, Civ. Code."

It was also held in the case of *In re Croghan,* 92 Cal. 370, 28 Pac. 570, that: "The clear and explicit language of section 1474 deals in detail with the very identical case of a homestead on separate property created by the owner of such property. The legislative mind, when enacting it, was directed specially to that particular kind of homestead; and its intent, thus directly and clearly expressed, is not to be taken as changed by other sections which use general language, and in which there is no direct reference made to a homestead carved out of separate property by the will of its owner. All the sections cited, when read together, clearly mean that . . . . when the selection has been 'from the separate property of the person selecting or joining in the selection of the same,' then it goes absolutely to the survivor."

See, also, *Tyrrell v. Baldwin,* 78 Cal. 474, 21 Pac. 116; *In re Burdick,* 76 Cal. 639, 18 Pac. 805; *Saddlemire v. Stockton Sav. & L. Soc.,* 144 Cal. 650, 79 Pac. 381.

Jonathan C., having succeeded to all of the rights, title and interest in the homestead at the death of Sarah A., the same became his separate property and was such at the time of his intermarriage with his second wife, Mary A. Jonathan C. having filed a declaration of homestead, wherein he selected out of his separate estate the premises in controversy, the title to the same upon his death vested, without administration, in his wife, Mary A., who likewise succeeded to all of the right, title and interest of her husband, without administration. Jonathan C. was not, as contended by appellants, vested with a life estate, neither was he a tenant in common with appellants, but under the statutes and by operation of law, he became vested with the fee-simple title. There are no creditors involved in this litigation. The devolution of the title to this land is governed by the statutes. The fact that Jonathan C. made a will, reiterating the statutory provisions, was immaterial and vested in the probate court no other and greater power than that provided under the statutes. Upon the death of Jonathan C. the title to the premises described in the declaration of homestead made

by him, by operation of law vested in his widow, Mary A., to the exclusion of his children or grandchildren by the former marriage, and the further fact that he did not mention his grandchildren in his will, or express an intention to eliminate them from participation in his estate, could in no way affect or defeat Mary A.'s title to the homestead.

We have carefully examined both the declaration of homestead made by Sarah A. and Jonathan C., for the purpose of determining the validity of each, and have reached the conclusion that in each instance there was a sufficient compliance with the requirements of Rev. Stats., sec. 3071, both as to form and substance. (*Mellen v. McMannis,* 9 Ida. 418, 75 Pac. 98; *First National Bank of Hailey v. Glenn,* 10 Ida. 224, 109 Am. St. 204, 77 Pac. 623.)

Appellants lay considerable stress upon what they call a family settlement, upon which they seek to base their right to have quieted in each of them, respectively, a certain interest in the homestead property. This alleged family settlement is purported to have been made between Jonathan C. and certain of his children by his first marriage, appellants here. Without passing upon the competency of the testimony offered in support of this alleged family settlement, there is evidence in the record, given by certain of the appellants, to the effect that immediately following the death of Sarah A., certain conversations were had between the father, Jonathan C., and some of his children, in which an understanding was reached that two-thirds of the estate belonged to the children of the first marriage and one-third to Jonathan C., and that the latter should enjoy the possession of the homestead until his death, and retain the value of the crops grown thereon, upon condition that he would cultivate the homestead to crops, pay off a mortgage indebtedness, and educate the youngest son, Milo, to the extent of giving him college training. From the record it appears that Jonathan C. did nothing which would in any way indicate that any such agreement was ever made, and his conduct is entirely consistent with sole ownership of the premises in himself. It is admitted that no such agreement was had with Mary A.,

who, as testified by some of the witnesses, had no knowledge. of the alleged family settlement.

This oral agreement is supposed to have been entered into something like 19 years prior to the bringing of this action, during all of which time Jonathan C. and his wife, Mary A., remained in possession of the homestead, improved the same, paid the taxes, created and discharged mortgage liens thereon, and exercised exclusive control thereof, without protest or claim of ownership or right to possession on the part of appellants. A mere statement of the facts refutes any possible claim to right or title in appellants that can be urged in a court of equity and in a proceeding of this nature.

We think the facts above recited bring this case clearly within the rule announced in *Badger v. Badger*, 2 Wall. (U. S.) 87, 17 L. ed. 836, where the court said: " 'Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern courts of law in like cases. . . . . But there is a defense peculiar to courts of equity founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the Chancellor.' "

In *Ryan v. Woodin*, 9 Ida. 525, 75 Pac. 261, this court said: "Courts of equity discourage antiquated demands by refusing to interfere where there has been gross laches in prosecuting a claim or long acquiescence in the assertion of adverse rights."

We are not disposed to hold, under any view of the law, that title to real estate may be transferred by word of mouth, and without any written instrument purporting to convey such property or any change of possession.

From what has been said it follows that the judgment in this case should be affirmed. It is so ordered. Costs are awarded to respondents.

McCarthy and Dunn, JJ., concur.